IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| DONNA ROBERSON<br>on behalf of T.C., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | No. 3:14-cv-1503-BN |
| | § | |
| CAROLYN W. COLVIN, | § | |
| Acting Commissioner of Social Security, | § | |
| | § | |
| Defendant. | § | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Plaintiff Donna Roberson, the surviving parent of Tanya Coby ("Claimant"), seeks judicial review of a final adverse decision of the Commissioner of Social Security pursuant to 42 U.S.C. § 405(g). For the reasons stated herein, the hearing decision is reversed.

## Background

Claimant alleged that she was disabled due to a variety of ailments, including a tumor on the left brachial nerve in the shoulder and neck area, arthritis in the left shoulder, nerve damage, and high blood pressure. *See* Administrative Record [Dkt. Nos. 11-14] ("Tr.") at 149-61, 185, 209, 236. After Claimant's applications for disability insurance benefits and supplemental security income ("SSI") benefits were denied initially and on reconsideration, Claimant requested a hearing before an administrative law judge ("ALJ"). That hearing was held on July 29, 2013. *See id.* at 35-60. At the time of the hearing, Claimant was thirty-four years old. She had a high

school equivalency diploma and past work experience as a home health aide, cashier, kitchen worker, fast food worker, and day care provider. *See id.* at 53-54, 186. Claimant had not engaged in substantial gainful activity since her alleged onset date of January 26, 2012. *See id.* at 16, 19.

The ALJ found that Claimant was not disabled prior to April 25, 2013 and therefore not entitled to disability or SSI benefits for any impairments prior to that date. *See id.* at 29. Although the medical evidence established that Claimant suffered from schwannoma in the left arm and obesity, the ALJ concluded that, from the alleged onset date of January 26, 2012 until September 6, 2013, the severity of those impairments did not meet or equal any impairment listed in the social security regulations; however, on September 7, 2013, the medical evidence established that the severity of Claimant's soft-tissue sarcoma met the criteria for a listing and Claimant's case was considered terminal. *See id.* at 16, 19. The ALJ further determined that, from the alleged onset date of January 26, 2012 until April 24, 2013, Claimant had the residual functional capacity to perform a limited range of light work, restricted by Claimant's inability to use her dominant left hand, and Claimant could return to her past relevant work as a cashier, *see id.* at 27, and from April 25, 2013 until September 6, 2013, Claimant had the residual functional capacity to perform a limited range of sedentary work, *see id.* at 26, but, as of April 25, 2013, Claimant could not return to her past relevant employment and there were no jobs that existed in significant numbers in the national economy that Claimant could perform, *see id.* at 26, 28. The

2

ALJ also determined that Claimant was not disabled prior to April 25, 2013 but became disabled on that date and continued to be disabled through the date of the decision, which was November 20, 2013. *See id.* at 29.

Claimant appealed that decision to the Appeals Council but passed away on December 30, 2013, before the Council could act. *See id.* at 276. The Council affirmed.

Plaintiff then filed this action in federal district court. Plaintiff challenges the hearing decision on four general grounds: (1) the ALJ improperly determined the onset date of disability; (2) the assessment of Claimant's residual functional capacity is not supported by substantial evidence and results from reversible legal error; (3) the ALJ improperly evaluated Claimant's credibility; and (4) the ALJ improperly rejected the opinions of Claimant's treating physician.

The Court determines that the hearing decision must be reversed and this case is remanded to the Commissioner of Social Security for further proceedings consistent with this opinion.

## Legal Standards

Judicial review in social security cases is limited to determining whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether Commissioner applied the proper legal standards to evaluate the evidence. *See* 42 U.S.C. § 405(g); *Copeland v. Colvin*, 771 F.3d 920, 923 (5th Cir. 2014); *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971);

3

*accord Copeland*, 771 F.3d at 923. The Commissioner, rather than the courts, must resolve conflicts in the evidence, including weighing conflicting testimony and determining witnesses' credibility, and the Court does not try the issues *de novo*. *See Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995); *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994). This Court may not reweigh the evidence or substitute its judgment for the Commissioner's but must scrutinize the entire record to ascertain whether substantial evidence supports the hearing decision. *See Copeland*, 771 F.3d at 923; *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988). The Court "may affirm only on the grounds that the Commissioner stated for [the] decision." *Copeland*, 771 F.3d at 923.

"In order to qualify for disability insurance benefits or [supplemental security income], a claimant must suffer from a disability." *Id.* (citing 42 U.S.C. § 423(d)(1)(A)). A disabled worker is entitled to monthly social security benefits if certain conditions are met. *See* 42 U.S.C. § 423(a). The Act defines "disability" as the inability to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or last for a continued period of 12 months. *See id.* § 423(d)(1)(A); *see also Copeland*, 771 F.3d at 923; *Cook v. Heckler*, 750 F.2d 391, 393 (5th Cir. 1985). The Commissioner has promulgated a five-step sequential evaluation process that must be followed in making a disability determination:

1.   The hearing officer must ascertain whether the claimant is engaged in substantial gainful activity. A claimant who is working is not disabled regardless of the medical findings.

2.   The hearing officer must determine whether the claimed impairment is "severe." A "severe impairment" must significantly limit the claimant's physical or mental ability to do basic work activities. This determination must be made solely on the basis of the medical evidence.

3.   The hearing officer must decide if the impairment meets or equals in severity certain impairments described in Appendix 1 of the regulations. The hearing officer must make this determination using only medical evidence.

4.   If the claimant has a "severe impairment" covered by the regulations, the hearing officer must determine whether the claimant can perform his or her past work despite any limitations.

5.   If the claimant does not have the residual functional capacity to perform past work, the hearing officer must decide whether the claimant can perform any other gainful and substantial work in the economy. This determination is made on the basis of the claimant's age, education, work experience, and residual functional capacity.

*See* 20 C.F.R. § 404.1520(b)-(f); *Copeland*, 771 F.3d at 923 ("The Commissioner typically uses a sequential five-step process to determine whether a claimant is disabled within the meaning of the Social Security Act. The analysis is: First, the claimant must not be presently working. Second, a claimant must establish that he has an impairment or combination of impairments which significantly limit [her] physical or mental ability to do basic work activities. Third, to secure a finding of disability without consideration of age, education, and work experience, a claimant must establish that his impairment meets or equals an impairment in the appendix to the regulations. Fourth, a claimant must establish that his impairment prevents him from

doing past relevant work. Finally, the burden shifts to the Secretary to establish that the claimant can perform the relevant work. If the Secretary meets this burden, the claimant must then prove that he cannot in fact perform the work suggested." (internal quotation marks omitted)); *Audler v. Astrue*, 501 F.3d 446, 447-48 (5th Cir. 2007) ("In evaluating a disability claim, the Commissioner conducts a five-step sequential analysis to determine whether (1) the claimant is presently working; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment listed in appendix 1 of the social security regulations; (4) the impairment prevents the claimant from doing past relevant work; and (5) the impairment prevents the claimant from doing any other substantial gainful activity.").

The claimant bears the initial burden of establishing a disability through the first four steps of the analysis; on the fifth, the burden shifts to the Commissioner to show that there is other substantial work in the national economy that the claimant can perform. *See Copeland*, 771 F.3d at 923; *Audler*, 501 F.3d at 448. A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. *See Copeland*, 771 F.3d at 923; *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

In reviewing the propriety of a decision that a claimant is not disabled, the Court's function is to ascertain whether the record as a whole contains substantial evidence to support the Commissioner's final decision. The Court weighs four elements to determine whether there is substantial evidence of disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) subjective

evidence of pain and disability; and (4) the claimant's age, education, and work history. *See Martinez*, 64 F.3d at 174.

The ALJ has a duty to fully and fairly develop the facts relating to a claim for disability benefits. *See Ripley*, 67 F.3d at 557. If the ALJ does not satisfy this duty, the resulting decision is not substantially justified. *See id.* However, the Court does not hold the ALJ to procedural perfection and will reverse the ALJ's decision as not supported by substantial evidence where the claimant shows that the ALJ failed to fulfill the duty to adequately develop the record only if that failure prejudiced Plaintiff, *see Jones v. Astrue*, 691 F.3d 730, 733 (5th Cir. 2012) – that is, only if Plaintiff's substantial rights have been affected, *see Audler*, 501 F.3d at 448. "Prejudice can be established by showing that additional evidence would have been produced if the ALJ had fully developed the record, and that the additional evidence might have led to a different decision." *Ripley*, 67 F.3d at 557 n.22. Put another way, Plaintiff "must show that he could and would have adduced evidence that might have altered the result." *Brock v. Chater*, 84 F.3d 726, 728-29 (5th Cir. 1996).

## Analysis

Among the arguments that Plaintiff makes is a single ground that compels remand – whether the ALJ properly determined the onset date of disability. Plaintiff contends that the ALJ failed to apply the correct legal standards in determining the onset date of disability and that the ALJ's determination of the onset date of disability is not supported by substantial evidence.

Social Security Ruling 83-20 ("SSR 83-20") prescribes the policy and procedure for determining the onset date of disability. *See* SSR 83-20, 1983 WL 31249 (S.S.A. 1983); *Spellman v. Shalala*, 1 F.3d 357 (5th Cir. 1993). "SSR 83-20 stresses that '[i]n many claims, the onset date of [a disability] is critical; it may affect the period for which the individual can be paid and may even be determinative of whether the individual is entitled to or eligible for any benefits.' As a result, 'it is essential that the onset date be correctly established and supported by the evidence. Factors relevant to the determination of disability onset include the individual's allegation, the work history, and the medical evidence. These three factors are often evaluated together. The starting point of determining the onset date is the claimant's allegation as to when the disability began, and the date the disability caused the claimant to stop work is often very significant. Nevertheless, the medical evidence is the primary element in the determination of onset of disability.'" *Spellman*, 1 F.3d at 361 (quoting SSR 83-20) (citations omitted). "'The claimant's stated onset date is used as the established onset date when it is consistent with available evidence.'" *Id.* (quoting *Ivy v. Sullivan*, 898 F.2d 1045, 1048 (5th Cir. 1990)).

SSR 83-20 recognizes that, with slowly progressive impairments, "it is sometimes impossible to obtain medical evidence establishing the precise date an impairment because disabling." *Id.* (quoting SSR 83-20). "In such cases, it will be necessary to infer the onset date from the medical and other evidence that describe the history and symptomatology of the disease process." SSR 83-20; *see also Tolliver ex. rel.*

*Tolliver v. Astrue*, Civ. A. No. 11-39, 2012 WL 566906, at *5 (W.D. La. Jan. 23, 2012) (analyzing cancer as a slowly progressive impairment subject to the mandates of *Spellman* and SSR 83-20). "Particularly in the case of slowly progressive impairments, it is not necessary for an impairment to have reached listing severity (i.e., be decided on medical grounds alone) before onset can be established." *Id.* In cases in which precise evidence is not available and there is a need for inferences, "'[h]ow long the disease may be determined to have existed at a disabling level of severity depends on an *informed judgment* of the facts in the particular case. This judgment, however, must have a *legitimate medical basis. At the hearing, the administrative law judge (ALJ) should call on the services of a medical advisor when onset must be inferred.*'" *Spellman*, 1 F.3d at 361 (quoting SSR 83-20) (emphasis in original).

Construing SSR 83-20, the United States Court of Appeals for the Fifth Circuit held that, "in cases involving slowly progressive impairments, when the medical evidence regarding the onset date of a disability is ambiguous and the Secretary must infer the onset date, SSR 83-20 requires that that inference be based on an informed judgment. The Secretary cannot make such an inference without the assistance of a medical advisor." *Id.* at 362.

According to the medical evidence, Claimant had a slowly progressive impairment. On November 29, 2010, Claimant saw Jeannette Liu, M.D. concerning a lump on her left shoulder, which had been there since 2004 and caused left arm pain and numbness. Claimant indicated that, over time, the mass had increased with

accompanying swelling, throbbing, and numbness down the arm. Diagnostic testing showed a large cystic area on top of the left shoulder, and Dr. Liu diagnosed neoplasm of uncertain behavior in the peripheral nerve and shoulder mass and recommended a MRI. In a January 11, 2011 follow-up visit, Dr. Liu opined that, according to MRI imaging, Claimant likely had a brachial plexus nerve sheath tumor or other soft tissue mass and mild osteoarthritis of the AC joint in the left shoulder. *See* Tr. at 17, 287, 289-90, 293, 1493.

Claimant was referred to Howard Morgan, M.D., a neurosurgeon, for further evaluation. *See* Tr. at 294. Dr. Morgan's impression was that the mass was most likely a brachial plexus tumor, and he scheduled Claimant for surgery. *See id.* at 295-96.

Claimant quit work on January 25, 2012 so that she could have the surgery, *see id.* at 38, and alleged the onset date of disability was January 26, 2012, *see id.* at 149, 155.

On January 31, 2012, Dr. Morgan performed exploratory surgery of the left brachial plexus tumor with biopsy and limited excision. Dr. Morgan decided that it was not prudent to remove the tumor completely or even remove most of it because the risk of neurological injury to the left upper extremity was too great and he was concerned about its proximity to major blood vessels. *See id.* at 17, 357-58. The neuropathologist who reviewed the biopsy diagnosed a brachial plexus neurofibroma, WHO grade, and concluded that Claimant had a low grade schawnn cell neoplasm, schwannoma v. neurofibroma. *See id.* at 17, 369-70. Claimant was discharged with a diagnosis of a

large, left-sided brachial plexus tumor, probably benign schwannoma. *See id.* at 343. During a February 13, 2012 follow-up visit, Dr. Morgan advised Claimant to exercise her arm and follow-up with a radiotherapist. *See id.* at 17, 374-75.

Claimant saw Steven Wolfgang, an occupational therapist, on March 19, 2012 for worsening pain and weakness in her left arm. Wolfgang reported very limited sensation in the left arm and assessed Claimant with brachial plexus lesion causing her severe weakness and pain in the left upper extremity. *See id.* at 17, 378.

Claimant followed-up with Dr. Morgan on March 29, 2012 and reported decreased pain. Dr. Morgan observed that the mass "might even be a bit larger" than before and encouraged Claimant to try to use her left upper extremity and keep the range of motion as much as she could even though she had significant weakness. *See id.* at 17-18, 681.

Claimant returned for occupational therapy on April 3, 2012 and reported that her left arm pain had significantly increased. *See id.* at 685.

In a Function Report - Adult dated April 5, 2012, Claimant explained that her ability to work was limited because she was in constant, severe pain and could not use her left arm whatsoever but she could use her dominant right arm unimpaired. *See id.* at 22, 200.

On April 10, 2012, occupational therapist Wolfgang noted improvement for pain and function of the arm. *See id.* at 688. On April 17, 2012, Wolfgang noted significant improvement for range of motion, pain, and functional use of the left upper extremity

and the ability to use the hand for very basic tasks such as holding a tube of toothpaste. *See id.* at 691. On April 24, 2012, Wolfgang noted increased edema, *see id.* at 694, and, on May 1, 2012, noted increased numbness and reduced grip strength and range of motion, *see id.* at 697-98. Monofilament testing confirmed decreased sensation, and moderate to severe edema had spread throughout the left upper extremity from the left hand to the shoulder. *See id.*

Claimant underwent a physical consultative examination on May 24, 2012 by Mahmood Panjwani, M.D., who found a "huge tumor almost the size of a small watermelon" that covered the entire left supraclavicular fossa region. The tumor was "excruciatingly tender to even superficial touch," and Claimant had difficulty turning her cervical spine to the left because the size of the tumor prevented her from doing so. Dr. Panjwani observed that Claimant kept her left arm close to her body, avoiding any use of her left arm because of pain, and avoided using her left upper extremity for any supporting activity. Claimant had almost no movement at the shoulder level, was able to flex her elbow halfway but had pain on supination and pronation of her left forearm, and had about 1/5 muscle power in her left hand and in her left forearm. *See id.* at 604-09.

Also on May 24, 2012, Claimant sought treatment at Parkland Hospital of Dallas, where the attending physician noted that she had a 15-by-11-centimeter mass consistent with a large neurofibroma, grade 1, and referred Claimant to a radiation/ oncology specialist. *See id.* at 1500, 1502. Claimant had a consultation with Ramzi Abdulrahman, M.D., a radiologist, on June 6, 2012, who described Claimant as "very

debilitated by this mass." Dr. Abdulrahman noted that Claimant had profound weakness on her left shoulder, which she was unable to lift, and her left upper extremity was very weak with poor hand grip. Because further resection was not an option, Dr. Abdulrahman scheduled Claimant for radiation therapy. *See id.* at 717. Claimant underwent radiotherapy from June 12, 2012 through August 7, 2012. *See id.* at 18, 737, 745, 752, 757, 766, 778, 786, 1629.

Claimant also continued occupational therapy between June 1, 2012 until August 17, 2012 when Wolfgang noted that Claimant "appears to be in constant pain at this time." *See id.* at 795. During this course of treatment, Claimant had reduced grip strength, deficits in wrist extension, pronation, supination, elbow flexion, and extension, and her edema and weakness were worse. *See id.* at 708, 721, 741, 748, 773, 781, and 795.

On June 20, 2012, Maryim Saif, M.D. performed a physical residual functional capacity assessment. Dr. Saif noted a primary diagnosis of low-grade schwannoma, left arm. Dr. Saif assigned a functional ability to perform light exertional activities: lifting 20 pounds occasionally, 10 pounds frequently, stand and/or walk for 6 hours in an 8 hour work day, and sit for 6 hours in an 8 hour work day. *See id.* at 18, 615-22.

Claimant had a follow-up with Dr. Morgan on August 23, 2012. Claimant continued to experience lymphedema, pain, and upper extremity weakness. Upon examination, Dr. Morgan noted 2/5 strength in the shoulder region with limited elbow flexion and extension with deficits in wrist flexion, extension, and hand grip. Dr.

13

Morgan also considered it "unlikely another surgical procedure will be of benefit to her, but it is not out of the question at this point." *Id.* at 18-19, 785.

Dr. Morgan completed a medical source statement on August 23, 2012 in which he reported that Claimant suffered from chronic, severe pain that would frequently require rest periods and frequently cause her to be absent from a workplace and that she could never lift or carry with her left upper extremity. Dr. Morgan commented that Claimant had a "large tumor that is continuing to progress in spite of surgery and radiotherapy" and found that her limitations began to be disabling on January 12, 2012. *See id.* at 866-68.

On September 21, 2012 and October 1, 2012, occupational therapist Wolfgang noted that the tumor appeared to be decreasing in size. *See id.* at 19, 814, 818.

On December 6, 2012, Dr. Morgan observed that Claimant's "left arm weakness has not improved" and "the lesion is unchanged since treatment." Dr. Morgan noted that the mass was 24 by 17.5 centimeters and scheduled a brachial plexus and neck MRI. *See id.* at 1546. Claimant had an MRI on December 1, 2012, which revealed a large left supraclavicular mass involving the left brachial plexus trunks compatible with neurofibroma. The radiologist observed that the tumor extended along the C8 and T1 nerve roots to the respective neural foramina with possible extension along the C6 and C7 nerve roots as well. Although the C5 nerve root did not appear directly involved, the lateral cord was "draped over" and impinged between the clavicle and tumor. *See id.* at 1660.

14

Plaintiff was treated at an emergency room for pain on January 10, 2013. *See id.* at 1653. On February 14, 2013, physicians at Parkland Hospital noted that the mass was 15 by 11 centimeters in dimension and expressed concern about the progression of her disease. *See id.* at 1559-60.

On March 14, 2013, a CT study of Claimant's chest revealed a large complex predominantly cystic mass of 12.3 centimeters in maximum dimension that encased the left vertebral artery and subclavian artery. The left jugular vein and subclavian vein appeared displaced and compressed. There were also 3-millimeter nodules in the right middle lung lobe with a subpleural nodule in the right lower lobe, plus two nodules in the left lung lower lobe. Radiologists were uncertain whether the nodules were malignant or benign and noted they were too small to be biopsied. *See id.* at 1721-22.

On March 28, 2013, physicians at Parkland Hospital were "concerned about progression/transformation of her disease" and recommended multiple neurosurgical biopsies. *See id.* at 1698.

On April 25, 2013, Dr. Morgan observed that Claimant had little motion of her left upper extremity and the "mass seems to be enlarged." He recommended a more radical tumor removal with biopsy. *See id.* at 19, 1747-48. The ALJ determined that April 25, 2013 was the onset date of disability. *See id.* at 28.

On September 7, 2013, diagnostic studies determined that Claimant's soft-tissue sarcoma had metastasized and affected other aspects of her spinal column and

pulmonary system. *See id.* at 19, 1772, 1775-76. The ALJ determined that, since September 7, 2013, the severity of Claimant's soft tissue sarcoma met the criteria of listing-level severity and her case was considered terminal. *See id.* at 19, 26-27. Claimant's condition continued to deteriorate, and she passed away on December 30, 2013. *See id.* at 276.

The onset date of disability from Plaintiff's progressively deteriorating impairment was ambiguous. Claimant claimed the onset date was January 26, 2012, after she stopped working so that she could have surgery. According to her treating physician, a neurosurgeon, the onset date was January 12, 2012. The ALJ found the onset date of disability to be April 25, 2013 when that same physician noted that the "mass seems to be enlarged" and recommended a more radical tumor removal with biopsy. It is unclear why the ALJ chose April 25, 2013 as the onset date, and, because the onset date was ambiguous, the ALJ was required to consult a medical advisor in order to make an informed judgment concerning. But the ALJ erred by arbitrarily determining the onset date of disability without consulting a medical advisor, contrary to the mandates of SSR 83-20. That error was prejudicial because if, according to informed judgment made in consultation with a medical advisor, an earlier onset date had been established, Plaintiff would have been entitled to greater benefits. *See Conner v. Colvin*, 985 F. Supp. 2d 167, 170 (D. Mass. 2013).

## Conclusion

The hearing decision is reversed and this case is remanded to the Commissioner of Social Security for further proceedings consistent with this opinion.

DATED: March 16, 2015

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE